FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

98 DEC 28 PM 4: 32

U.S. DISTRICT COURT
N.D. OF ALABAMA

LYNN F. WEEMS, )
 )
    Plaintiff, )
 )      CV-97-P-00597-S
-vs.- )
 )
CHEROKEE CONTRACTING, )
 )
    Defendant. )

DEC 29 1998

## MEMORANDUM OPINION

Before the court is the defendant's Motion for Summary Judgment, filed on March 31, 1998. The motion was heard at the April 17, 1998 motion docket and was thereafter taken under submission. In this case, the plaintiff claims that she did the same work but was paid less than a male employee of Cherokee Contracting. The defendant asserts that the plaintiff's Equal Pay Act claim must fail because the employees' jobs were not substantially similar and that the difference between the wages paid was not gender-based. For the reasons expressed below, the defendant's motion is due to be granted.

### Facts[1]

The defendant, Cherokee Contracting, Inc., is a Delaware corporation in the business of constructing telecommunications systems. Beginning sometime in 1996, Cherokee was involved with the construction of approximately 150 telecommunications towers in Alabama for one of its clients, Powertel. Cherokee's now-closed office in Leeds, Alabama (the "Leeds office") was charged with coordinating the Powertel project.

---

[1] The facts are presented in the light most favorable to the plaintiff, the non-moving party.

12

The plaintiff, Lynn Weems, worked in the Leeds office from approximately July of 1996 to February of 1997. Originally hired by Colonial Personnel, a temporary employment agency, Weems was soon assigned to temporary secretarial work at Cherokee's Leeds office. Weems received hourly wages from Colonial Personnel based on timesheets submitted by Weems to Colonial. However, in September of 1996, Weems became a full-time Cherokee employee.[2]

When Weems first began her job at the Leeds office, her duties included filing, typing, making photocopies, answering the telephone, faxing, and other clerical tasks. Weems contends that she later began assisting the senior program manager, Thom Horton, with creating spreadsheets to schedule tower crews and accompanied Horton to meetings with Powertel. While Weems admits that from August to mid-September of 1996 she spent at least fifty percent of her time doing secretarial work, she also asserts that during this time she was asked to take over the duties of a resigning Project Manager, Mr. Long.[3] Weems alleges that she was asked to take over Long's duties with regard to the fencing subcontractors and the creation of daily schedules for the tower sites. Weems was apparently supervised by several project managers and attended meetings with the managers. She concedes, however, that during meetings with Powertel representatives, it was Horton who "dealt with the higher issues" and answered questions about the project.

Mr. Long, the employee who serves as the comparator in this case, was initially hired as a Permitting Manager with Cherokee in early 1996.[4] In this capacity, Long was responsible for

---

[2] There is some dispute about Weems allegedly receiving wages from both Colonial and Cherokee from September through December of 1996.

[3] Another clerical employee was also hired around this time.

[4] Prior to accepting employment with Cherokee, Long worked as an accountant for many years.

obtaining zoning approval of tower site plans and securing other necessary permits. His job required him to meet with inspectors, engineers, government agents, and various other persons. After about two months with Cherokee, Long was asked to assist the Project Manager in the Leeds Office. Only a short time later, Long was promoted to Project Manager in Leeds. According to Long, his job duties at the Leeds office changed almost weekly, depending on the types of problems that arose. Regarded as a "troubleshooter" by the defendants, Long dealt with problems ranging from processing change orders to correcting inadequate grounding at tower sites. In fact, during very busy times, Long worked as many as 100 hours per week attending to "trouble areas."

Long resigned from Cherokee in September of 1996 in order to spend more time with his family. Weems claims that she was asked to take over Long's duties after his resignation. More specifically, she alleges that she was reassigned Long's responsibilities with regard to the fencing subcontractors and the creation of daily schedules for the tower sites, among other things. Weems filed suit under the Equal Pay Act after she was terminated in February of 1997.

## Analysis

The Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1), prohibits employers from paying men and women differently when the employees perform substantially equal work on jobs requiring equal skill, effort, and responsibility, and which were performed under similar working conditions. See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974). Although a plaintiff need not show that the jobs held by employees of opposite sexes were *identical* to succeed in her prima facie case, a plaintiff must nevertheless prove that the jobs were substantially equal. Id. at 204. The difference in the two employees' professional experience, education, and capabilities is not necessarily relevant to

an EPA claim.[5] What really does matter, however, is the similarity of the actual jobs being done.

In this case, the plaintiff admits there were some differences between her job duties her and those of Long. Although the plaintiff still asserts that the jobs were substantially similar enough to establish a prima facie case under the Equal Pay Act, the court disagrees. The autonomy, responsibility, and variability of Long's duties are not substantially similar to Weems's. The court finds that the two jobs were too different to constitute a valid claim under the EPA and that no reasonable jury would find otherwise. Because no genuine issues of material fact exist, the defendant's motion for summary judgment is due to be granted.

Date: _____Dec. 28_____, 1998.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    John F. Kizer, Jr.
    Stephen E. Brown
    Charles T. Huddleston
    L. Patricia Arias

---

[5] Several courts have addressed whether employers may reward professional experience and education without violating the EPA. See Stanley v. University of So. Cal., 13 F.3d 1313, 1322 (9th Cir. 1994) (citing Soto v. Adams Elevator Equip. Co., 941 F.2d 543, 548 & n.7 (7th Cir. 1991); Hassman v. Valley Motors, Inc., 790 F. Supp. 564, 568 (D. Md. 1992).